# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Cynthia Wilson,

      Plaintiff,

v.

Jayne Miller (individually and in her official capacity) and Minneapolis Park and Recreation Board,

      Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 13-2286 ADM/SER

___

Lisa M. Lamm Bachman, Esq., Foley & Mansfield, PLLP, Minneapolis, MN, on behalf of Plaintiff.

Ann E. Walther, Esq., Rice, Michels & Walther LLP, Minneapolis, MN, on behalf of Defendants.

___

## I. INTRODUCTION

On November 6, 2014, the undersigned United States District Judge heard oral argument on Defendants' Motion for Summary Judgment [Docket No. 55] and Plaintiff's Motion for Leave to Amend Complaint and to Amend Scheduling Order [Docket No. 38]. Plaintiff Cynthia Wilson ("Wilson") alleges Defendants Jayne Miller ("Miller") and the Minneapolis Park and Recreation Board ("MPRB") retaliated against her for exercising her First Amendment rights.

For the reasons set forth below, Defendants' summary judgment motion is granted in part and Plaintiff's motion to amend the Complaint and Scheduling Order is denied as moot.

## II. BACKGROUND

The MPRB is a semi-autonomous department of the City of Minneapolis headed by a

superintendent who reports to an elected board of commissioners. Defs.' Mem. Supp. Summ. J. [Docket No. 57] 2. Since 2010, Miller has held the position of MPRB superintendent. Id. Wilson, an African American, has been employed by the MPRB in various capacities since 1989. Am. Compl. [Docket No. 24] ¶ 6.

Wilson alleges that Miller and the MPRB retaliated against her for engaging in activity protected by the First Amendment. She contends that her comments in an interview for a newspaper article in September 2012 and her questions during an MPRB open budget meeting in December 2012 motivated Defendants to take retaliatory action against her. The retaliatory acts included announcing an open position on a limited basis internally, negative comments on her performance review, failing to hire her for a new position, two suspensions without pay, a Performance Improvement Plan, and a written reprimand. Wilson also alleges that Defendants discriminated against her in violation of the Minnesota Human Rights Act.

**A. Wilson's Discipline Before the Protected Speech**

In January 2011, before Wilson engaged in the protected speech, the MPRB attempted to terminate Wilson for substandard performance for improperly supervising an employee who had systematically stolen money from the MPRB. Walther Aff. [Docket No. 58] Ex. G at 10. Wilson challenged her termination with the Civil Service Commission ("Commission"). Id. 1. The Commission determined that termination was excessively harsh as Wilson's previous performance evaluations had been good to excellent. Id. 20. She was reinstated to her position after a 30-day suspension. Id. When Wilson returned from her suspension, she refused to comply with a MPRB policy requiring employees to pay for their personal calls, and received a one-day suspension for insubordination. Walther Aff. Ex. Q. During this time period, the

MPRB also extended Wilson's standard probationary period because she needed improvement in four of seven areas reviewed. Walther Aff. Ex. S. The two main bases for this extension were the manner in which she addressed persons, *i.e.* her tendency to be rude and disrespectful, and her refusal to follow the MPRB's policies. Id.

**B. The Environmental Analysis Report**

In October 2011, Miller hired an independent consulting firm, Dr. Betty Webb Consulting, Inc., to analyze the MPRB and address its organizational challenges and opportunities. Am. Compl. ¶ 24. The firm provided a report, the Environmental Analysis Report, to MPRB management in January 2012 based on interviews with over 100 individuals. Walther Aff. Ex. OO at 6. The report stated:

> There is widespread discontent and complaints about the unfavorable treatment of African American employees in particular and to some extent other employees of color. In our interviews with employees of color, it does not take long before the issues of race surface. And, when discussing these issues, people express an unwillingness to bring these issues up with their superiors for fear of punishment or retaliation. Many express fear of speaking up or of questioning practices. They assume that not only will it not be responded to but that they will also likely be punished – a climate of fear.

Id. 9.

**C. Wilson's Newspaper Interview and Alleged Retaliation**

On September 13, 2012, the Minnesota Spokesman-Recorder published an article highlighting complaints of racial discrimination within the MPRB. Am. Compl. ¶ 29. The article quoted Wilson, who discussed her concerns about race discrimination. Id. Miller was also quoted in the article and was therefore likely aware of Wilson's participation in the article. Id.

During September 2012, the MPRB announced an opening for the position of Deputy

Chief Superintendent externally, and on a limited basis internally. Id. ¶ 30. Wilson was interested in the position but did not learn of it until after the position had closed. Id. She alleges that the MPRB's failure to more prominently announce the position was retaliation for her comments in the article. Id. ¶ 51.

### D. Wilson's Speech at an Open Budget Meeting and Alleged Retaliation

#### 1. The MPRB Open Budget Meeting

On December 18, 2012, Wilson attended an open budget meeting during which MPRB employees were encouraged to ask questions and make comments regarding the budget process. Id. ¶ 31. At the meeting, Wilson asked Miller whether public funds were allocated to address the problem areas identified in the Environmental Analysis Report by Dr. Betty Webb Consulting, Inc. Id. According to Wilson, Miller became visibly angry and persuaded Wilson to meet with her privately to discuss the issues. Id.

Wilson alleges Miller's frustration with Wilson's comments during the open budget meeting impacted her annual performance review which occurred on December 28, 2012, ten days after the open budget meeting. Walther Aff. Ex. U. Heidi Pope, Wilson's manager, was responsible for Wilson's performance review. Bachman Aff., October 16, 2014, [Docket No. 64] ("Second Bachman Aff.") Ex. 18, Ex. 20. However, as part of the standard annual review procedure, Miller reviewed and commented on the drafts written by Pope before the employee received them. Id.

The evaluation stated that Wilson "needs improvement" on her communication skills, citing as an example Wilson "asking when [the MPRB] will begin working on the issues written about in the Environmental Analysis Report" during a meeting. Second Bachman Aff. Ex. 18 at

4

3. The evaluation also states that Wilson "needs improvement" on her interpersonal skills, referencing the manner in which Wilson asked questions during meetings, and the content of such questions as examples of inadequate interpersonal skills. Id. 5. Miller's edits to the review included negative comments of Wilson's handling of a situation at Van Cleve Park. Id. Wilson received a rating of "meets expectations" in all other areas as well as an overall rating of "meets expectations." Id.

On December 30, 2012, Wilson formally complained to the MPRB's Human Resources Department, raising her concerns that Miller retaliated against her in her annual evaluation for her questions during the open budget meeting. Walther Aff. Ex. V. After Wilson's complaint to Human Resources, her performance evaluation was amended to rate her as "needs improvement" in the areas of Decision Making, Problem Solving, and Interpersonal Skills, but not Communication. Walther Aff. Ex. X. She maintained an overall rating of "meet expectations." Id. Performance evaluations become available to internal hiring managers during the hiring process for open positions. Second Bachman Aff. Ex. 4 at 150-151.

### 2. Alleged Retaliation

#### a. Failure to Receive Promotion

In March 2013, Wilson applied for, was interviewed, and was a finalist for the position of Director of Recreation Centers and Programs. Walther Aff. Ex. NN. Ultimately, she was not selected for the position. Id. It was the hiring manager's decision to hire someone else for the opening. Second Bachman Aff. Ex. 7. He did, however, discuss the candidates with Miller after his interviews with the candidates. Id.

### b. Suspensions, Performance Improvement Plan, and Written Reprimand

In April 2013, Pope instructed Wilson to discipline two of Wilson's subordinates for their work-related conduct. Walther Aff. Ex. Z. Wilson issued verbal warnings to both employees, but Pope subsequently informed her that she needed to issue written warnings to be consistent with the discipline issued to other MPRB employees for similar offenses. Walther Aff. Ex. BB. Wilson completed the paperwork for the written warnings and met with each employee to deliver the revised discipline. Second Bachman Aff. Exs. 24, 27. However, she refused to sign the written warnings to the first employee when Pope directed her to do so, insisting it would "falsify" the documents because they did not accurately reflect her view of the appropriate disciplinary measure. Walther Aff. Ex. FF.

As a result, Wilson received a ten-day suspension without pay for insubordination. Bachman Aff. Ex. 28. On her return to work, she refused to sign the second employee's warning and received another unpaid suspension, this time for 20 days. Walther Aff. Ex. GG. Miller signed off on both of Wilson's suspensions. Walther Aff. Exs. CC, GG. When Wilson returned to work in July 2013, Wilson's manager placed her on a performance improvement plan due to her two suspensions. Second Bachman Aff. Ex. 5 at 103. Miller was aware of Wilson's performance improvement plan. Id. 145. While on the performance improvement plan, Wilson received a written reprimand for failing to immediately report a possible violation of MPRB's harassment policy, as required by that policy. Walther Aff. Ex. KK.

### E. Events Subsequent to the Filing of the Amended Complaint

Wilson now seeks leave to amend the complaint for a second time due to events that have occurred since she filed the Amended Complaint on May 12, 2014. Specifically, Wilson did not

receive a position for which she applied and was permanently demoted following an incident at a MPRB training meeting. Bachman Aff., September 16, 2014, [Docket No. 41] ("First Bachman Aff.") Ex. A; Wilson Aff. [Docket No. 42] ¶ 6, Ex. B. Wilson has appealed the disciplinary measure with the Civil Service Commission, but the Commission has not yet issued a decision on the matter. Wilson Aff. ¶ 6, Ex. B. Wilson seeks to add a Minnesota Human Rights Act reprisal claim to the complaint and asks for additional time to conduct discovery on the recent events.

### III. DISCUSSION

**A. Standard for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

The United States Supreme Court, in construing Federal Rule 56(c), stated in Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986):

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). However, the nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

If the nonmoving party presents evidence sufficient to permit a reasonable jury to return a verdict in its favor, summary judgment is inappropriate. Id. However, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . . Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation omitted). Moreover, a plaintiff facing a summary judgment motion cannot "get to a jury without any significant probative evidence tending to support the complaint." Rath v. Selection Research, Inc., 978 F.2d 1087, 1091 (8th Cir. 1992), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In addition, a defendant's motion for "summary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint." Krenik, 47 F.3d at 959.

**B. First Amendment Retaliation Under §1983**

**1. The §1983 Claim Against the MPRB**

Wilson asserts a § 1983 claim against the MPRB. Under the Supreme Court's decision in Monell v. Department of Social Services of the City of New York, municipalities may not be held vicariously liable under §1983 for the unconstitutional actions of its employees unless the execution of a municipality's policy or custom is the "moving force" behind the Constitutional violation. 436 U.S. 658, 694 (1978). To establish the existence of a municipal "custom," a plaintiff must show:

1. The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the municipality's employees;

2. Deliberate indifference to or tacit authorization of such conduct by the municipality's policymaking officials after notice to the officials of that misconduct; and

> 3. The plaintiff's injury by acts pursuant to the municipality's custom, i.e., proof that the custom was the moving force behind the constitutional violation.

Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999).

Wilson does not attempt in her opposition brief to articulate a custom or practice at the MPRB that would expose the MPRB to § 1983 liability, ignoring this requirement under Monell. She does allege in her Amended Complaint that Defendants have a "policy, practice, usage and custom" of establishing a work environment that retaliates against employees for "speaking up." Am. Compl. ¶ 48. However, the only evidence offered in to support this allegation is the Environmental Analysis Report by Dr. Betty Webb Consulting, Inc. The report concluded:

> In our interviews with employees of color, it does not take long before the issues of race surface. And, when discussing these issues, people express an unwillingness to bring these issues up with their superiors for fear of punishment or retaliation. Many express fear of speaking up or of questioning practices. They assume that not only will it not be responded to but that they will also likely be punished – a climate of fear.

Walther Aff. Ex. OO at 9.

While the Environmental Analysis Report reflects employee fears of punishment for speaking up, it does not demonstrate a correlation between employees who "spoke up" and instances of retaliation by the MPRB. Employees may "assume" they will be punished, but Wilson has provided no evidence of employees who have been retaliated against for exercising their First Amendment rights. Since Wilson has not produced evidence of a custom of retaliation, the § 1983 claim against the MPRB is dismissed.

**2. The §1983 Claim Against Miller in Her Official Capacity**

In addition to naming the MPRB as a defendant, Wilson has sued Miller in her official capacity. Official capacity suits "generally represent only another way of pleading an action

9

against an entity of which the officer is an agent." Monell at 690 n.55. "[T]he real party in interest in an official capacity suit is the governmental entity and not the named official." Hafer v. Melo, 502 U.S. 21, 25 (1991). An official capacity suit requires proof that a policy or custom of the governmental entity was the moving force behind the violation of federal law. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

As discussed above, Wilson has not established the policy or custom at the MPRB that underlies her retaliation claim. Therefore, the § 1983 claim against Miller in her official capacity, like the claim against the MPRB, is dismissed.

### 3. The § 1983 Claim Against Miller in Her Personal Capacity

Wilson also asserts a § 1983 claim against Miller in her personal capacity. To establish a *prima facie* case of First Amendment retaliation against one's employer, a plaintiff must show that (1) she engaged in activity protected by the First Amendment; (2) the defendant took an adverse employment action against her; and (3) the protected activity was a substantial or motivating factor in the defendant's decision to take adverse employment action. Davison v. City of Minneapolis, 490 F.3d 648, 654-55 (8th Cir. 2007), citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). See also, Wagner v. Jones, 664 F.3d 259, 270 (8th Cir. 2011); Davenport v. Univ. of Ark. Bd. of Tr., 553 F.3d 1110, 1113 (8th Cir. 2009).

Miller concedes, for purposes of this motion, that Wilson's newspaper interview and her questions during the open budget meeting are protected under the First Amendment. Miller does, however, dispute that she took adverse employment action against Wilson. To constitute an adverse employment action, the action must have an adverse impact on the employee and "must effectuate a material change in the terms and conditions of employment." Duffy v.

McPhillips, 276 F.3d 988, 992 (8th Cir. 2002).

Wilson alleges that the performance review that evaluated her as "needing improvement" in some areas was retaliation for speaking at the open budget meeting because the evaluation references her comments about the Environmental Analysis Report. Second Bachman Aff. Ex. 18 at 3. By itself, a poor performance rating does not constitute an adverse employment action because it has no tangible effect upon the recipient's employment. Turner v. Gonzales, 421 F.3d 688, 696 (8th Cir. 2005). "An unfavorable [performance] evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms and conditions of the recipient's employment." Id. Wilson has failed to produce evidence that the negative comments on her evaluation materially changed the terms and conditions of her employment. Although the performance review is available to MPRB managers during the hiring process, Wilson's own deposition testimony states that she was not hired because she was "militant" and "arrogant." Walther Aff. Ex. B1 at 249.

Wilson further alleges Miller took the following adverse employment actions against her as a result of Wilson's exercise of protected speech. In addition to the poor performance review, "discretely" posting an MPRB job opening, declining to hire Wilson for the position of Director of Recreation Centers and Programs, and causing Wilson to receive two suspensions, a written reprimand, and a performance improvement plan. Miller disputes that Wilson's protected speech played a substantial or motivating role in these other employment actions. Indeed, Wilson herself has testified that these actions were taken for other reasons. In her sworn deposition, Wilson testified that:

- The "hidden" posting for the Deputy Superintendent position was retaliation for her reinstatement and because Miller did not want her to advance in the

>    organization.  Walther Aff. Ex. B1 at 212-213; 215.

- Wilson was not selected for the position of Director of Recreation Centers and Programs because she was "militant" and "arrogant."  Id. 249.

- The ten-day suspension was retaliation for her reinstatement, for not being a team player, and for being militant.  Id. 259-260.

- The twenty-day suspension was retaliation for her reinstatement and to show her who was in charge.  Id. 263-264.

- Her placement on a performance improvement plan was retaliation for just having been disciplined, to put the reins on her, and to show her that if she did not act or speak the way they wanted, she would be disciplined.  Id. 267.

- The written reprimand was retaliation by the human resources director for Wilson's reinstatement and because Wilson had filed a complaint against the director.  Id. 269, 272.

Wilson's argument is that, although she does not attribute these employment actions to retaliation for her protected speech in her deposition testimony, the Court should infer that retaliation for her involvement in the newspaper article and at the budgetary meeting was the actual motivation.  Wilson contends that Miller's actions toward Wilson are illegal, and that the terms Wilson used to describe the motivation behind Miller's actions are irrelevant.  She offers no case law to support this argument.

However, where Wilson herself does not believe these events were retaliation for the claim at hand – retaliation for protected activity under the First Amendment – the Court cannot infer that they were.  See, Rothmeier v. Inv. Advisors, Inc., 85 F.3d 1328, 1337 (8th Cir. 1996) (holding that where, in an age discrimination case, a plaintiff asserted that he was terminated for investigating alleged SEC violations by his employer, summary judgment was appropriate because "[t]his acknowledgment alone would completely refute [plaintiff's] claim of age discrimination.").  Wilson's own testimony undermines her allegations that retaliation for her

12

protected activity motivated the MPRB to take these steps. Retaliation for the Commission's 2011 decision to reinstate her is not the retaliation pled or covered under this claim. As Wilson cannot demonstrate that her protected speech was a "substantial" or "motivating" factor in these employment decisions, Miller is entitled to summary judgment on this claim.

## C. State Law Claims

With the dismissal of Wilson's § 1983 claim and her voluntarily withdrawal of her Equal Protection claim,[1] the only claims remaining, are the two Minnesota Human Rights Act claims, which arise under state law. Because there are no remaining claims over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the pendent state-law claims. See Johnson v. City of Shorewood, 360 F.3d 810, 819 (8th Cir. 2004) ("A federal district court has the discretionary power to decline jurisdiction where it has 'dismissed all claims over which it has original jurisdiction.'" quoting 28 U.S.C. § 1367(c)(3)). Accordingly, Counts III and IV are therefore dismissed without prejudice.

## D. Wilson's Motion for Leave to Amend the Complaint and Amend the Scheduling Order

Wilson seeks leave to amend the complaint to add an additional claim under the Minnesota Human Rights Act based on ongoing events subsequent to filing the Amended Complaint on May 12, 2014. Because this Court declines to exert supplemental jurisdiction over the state claims, the motion to amend the complaint to include an additional state law claim and allow discovery based on these recent events is denied as moot.

---

[1] Wilson stated in her opposition brief that she was voluntarily withdrawing her Equal Protection Claim. See Pl.'s Opp'n to Summ. J. [Docket No. 63] 2.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment [Docket No. 55] is **GRANTED IN PART**.

    A. Summary judgment is granted as to Count I of the Amended Complaint [Docket No. 24], and Count I is **DISMISSED WITH PREJUDICE**.

    B. Plaintiff has voluntarily withdrawn Count II, and Count II is **DISMISSED WITHOUT PREJUDICE.**

    C. The Court declines to exercise supplemental jurisdiction over Counts III and IV, and Counts III and IV are **DISMISSED WITHOUT PREJUDICE**.

2. Plaintiff's Motion for Leave to Amend the Complaint and to Amend the Scheduling Order [Docket No. 38] is **DENIED** as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  January 20, 2015.